AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
5/27/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DTA___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
05/27/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___M.B.___ DEPUTY

United States of America

v.

TANNER JASON SHERWOOD,

Defendant.

Case No. **8:22-mj-00395-DUTY**

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of February 2, 2022 in the county of Orange in the Central District of California, the defendant violated:

*Code Section*
18 U.S.C. § 924(c)(1)(A)(i)

*Offense Description*
Possession of a Firearm in Furtherance of a Drug Trafficking Crime

This criminal complaint is based on these facts:

Please see attached affidavit.

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Daniel Thompson, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: May 27, 2022

*Judge's signature*

City and state: Santa Ana, California

Honorable John D. Early, U.S. Magistrate Judge
*Printed name and title*

AUSA: Gregory Scally (714-338-3592)

## AFFIDAVIT

I, Daniel Thompson, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for Tanner Jason Sherwood ("SHERWOOD") for a violation of 18 U.S.C. §§ 924(c)(1)(A)(i): Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since August of 2001. I am currently assigned to the ATF Los Angeles Field Division, Santa Ana Field Office. I am charged with investigating violations of federal arson, explosives and firearm laws and regulations. I regularly refer to these laws

and regulations during the course of my official duties. In the course of my employment as an ATF SA, I have assisted in and conducted numerous investigations involving criminal street gangs, possession of firearms and/or ammunition by prohibited persons, possession of stolen firearms, possession of machineguns, and the illegal trafficking of firearms and narcotics. As an ATF SA, I have also participated in numerous federal and state search and arrest warrants involving individuals engaged in unlawfully possessing and trafficking firearms and narcotics. I am a graduate of the Criminal Investigator Training Program instructed at the Federal Law Enforcement Training Center ("FLETC") and have completed specialized training at the ATF National Academy in the fields of arson, explosives, and firearms.

### III. SUMMARY OF PROBABLE CAUSE

4. On February 2, 2022, Costa Mesa Police Department ("CMPD") Gang Investigators drove an unmarked CMPD police vehicle through the Regency Inn parking lot in Costa Mesa and observed SHERWOOD walk into hotel room 207. The investigators recognized SHERWOOD from prior contacts, arrests, and past illegal narcotics related probation supervision. After observing SHERWOOD enter room 207, the investigators contacted the hotel front desk and asked about who was registered in the room. Investigators subsequently learned that room 207 was registered to a female who was on probation with active search and seizure conditions.

5. CMPD Gang Investigators ultimately proceeded to room 207 for the purpose of conducting a probation compliance check. SHERWOOD and two other individuals exited the room and were detained by law enforcement. While searching for additional occupants, law enforcement observed a pistol grip shotgun sitting in plain view inside room 207. SHERWOOD had the key to room 207 in his front right pants pocket and stated "yes" when asked if the keys belonged to him.

6. Once the location was deemed safe, law enforcement completed a thorough search of room 207. During the ensuing search, law enforcement located and recovered various types of suspected illegal narcotics, narcotics trafficking and use paraphernalia, $6,410.00 in US currency, a shotgun, a stolen 9mm pistol, ammunition, as well as numerous documents, paperwork and other items in SHERWOOD'S name. The stolen 9mm pistol was found in a safe that also contained one of SHERWOOD'S EDD tax documents and some of the aforementioned suspected illegal narcotics. Law enforcement additionally conducted a query of SHERWOOD'S criminal history and determined he had multiple prior felony convictions. SHERWOOD was ultimately placed under arrest for firearm and illegal narcotics related felony violations.

## IV. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.    February 2, 2022, Arrest of SHERWOOD**

8.   On Wednesday, February 2, 2022, Investigator J. Soto was working in his official capacity assigned to the CMPD Gang Investigations Unit. He was dressed in his department approved uniform and was driving an unmarked CMPD police vehicle equipped with emergency lights and sirens.

9.   At approximately 1820 hours, CMPD Gang Investigator Molina, CMPD Gang Investigator Ranck, and Orange County Deputy Probation Officer (DPO) Cozzitarto were riding inside the CMPD police vehicle with Investigator Soto.

10.  The aforementioned investigators drove through the parking lot of 2544 Newport Boulevard (Regency Inn Hotel) to conduct a patrol check and saw a bald white male standing on the second floor directly outside of room 207. The male made eye contact with Investigator Soto and immediately walked back inside room 207. The investigators were approximately 60 feet from the first floor and had no items obstructing their view.

11.  DPO Cozzitarto was sitting in the rear right seat of the police vehicle and recognized the male standing on the second floor as SHERWOOD, from previous contacts and past probation status/supervision.

12.  Investigators next contacted the front desk and spoke to a Regency Inn employee. Investigators asked the employee who the registered guest was in room 207, and the employee provided a document that had an image of a California identification card for Veronica Parker (#E1781631). Investigator Molina subsequently conducted records checks of Parker and discovered

4

she was currently on probation pursuant to case #20NF3494. Investigator Molina confirmed that Parker was convicted on or about August 31, 2021, and on probation until August 31, 2022, with search and seizure conditions. Investigators additionally obtained a key to room 207.

13. Investigator Soto later knocked on the door of room 207 in order to conduct a probation check. He identified himself as the Costa Mesa Police Department and stated the intention of conducting a probation check related to Veronica Parker. An unknown male yelled from inside the room, "Veronica is not here." Investigator Soto inserted a room key, but SHERWOOD opened the door and walked out of the room, attempting to create distance between himself and room 207. SHERWOOD also attempted to close the door behind him. Investigator Molina was able to keep the door open by placing his foot on the threshold. SHERWOOD verbally identified himself as Tanner Sherwood.

14. Investigator Soto grabbed both of SHERWOOD'S arms and walked him away from the doorway outside of the room. Two other males also walked out of the room and were later identified as Darrel Gonse and Mike Schuler. Investigator Molina detained both Gonse and Schuler as Investigator Ranck entered the room to look for Parker.

15. Investigator Molina handcuffed Schuler and told him that he was not under arrest and that he was only being detained. Schuler replied, "No I know." Investigator Molina asked Schuler if he could search him. Schuler replied, "Yeah." During the search of Schuler's left front pocket, Investigator

5

Molina located two metal straws. Investigator Molina inspected the straws and discovered residue of an unknown substance inside. Based on his training and experience, Investigator Molina immediately recognized the straws to be drug paraphernalia, or more specifically, instruments used to smoke illegal substances.

    16.   While Investigator Molina was searching Schuler, he asked him who the room belonged to. Schuler replied, "I don`t know. I`m visiting Tanner." Investigator Molina also asked Schuler about the straws. Schuler admitted to using the straws to smoke fentanyl. No other contraband was found on Schuler.

    17.   After concluding the search of his person, Investigator Molina seated Schuler on the ground. Once Schuler was seated, DPO Cozzitarto notified Investigator Molina that Gonse was only patted down and not fully searched. Gonse interjected and said, "You could search me." Investigator Molina confirmed that he could search Gonse and he replied, "Yeah."

    18.   During the search of Gonse`s front left pocket, Investigator Molina located a silver metal dabber. Investigator Molina inspected the dabber and noticed a white clumpy substance was attached to one of the ends. Based on his training and experience, Investigator Molina immediately recognized the substance to be a usable amount of fentanyl. Gonse claimed he did not use fentanyl but admitted to picking the item up prior to exiting the room. No other contraband was found on Gonse. After Investigator Molina concluded the search of his person, he handcuffed Gonse. Investigator Molina also reminded Gonse that

he was not under arrest and that he was only being detained. Gonse understood. Gonse was seated on the ground near Schuler.

19. Investigator Soto asked SHERWOOD if he could search him, and SHERWOOD stated, "Do whatever you want" at which time Investigator Soto asked him to clarify, and SHERWOOD said, "You`re good." Investigator Soto did not locate anything illegal on SHERWOOD, but did locate a cigarette, a lighter, and a set of keys in his front right jean pocket.

20. Additionally during the detention, Investigator Molina approached SHERWOOD and asked him where Parker was. SHERWOOD claimed Parker left approximately 20 minutes ago. Investigator Molina asked SHERWOOD if Parker left him in charge of the room. SHERWOOD said he was not in charge of the room.

21. While inside room 207, Investigator Ranck notified the other investigators that he had located a shotgun with a pistol grip within plain view. Investigator Ranck also confirmed Parker was not inside the room. Investigator Ranck later more specifically noted that as he entered room 207, he saw what appeared to be a black shotgun between the night stand and bed on the right side in plain view leaning against the wall. He also saw one 9mm round on top of the desk, several used methamphetamine glass pipes, used tooter/foil, and a large bag full of marijuana on the bed, all of which were in plain view.

22. Later during the detention, DPO Cozzitarto asked SHERWOOD if the cigarette, lighter, and keys were his. SHERWOOD confirmed that the items mentioned above were his, and DPO Cozzitarto placed the property in a safekeeping bag. A few

7

minutes later, DPO Cozzitarto again asked SHERWOOD if the keys were his, and he stated, "Yes." DPO Cozzitarto and Investigator Ranck noticed that a motel room key with the number 207 was attached to the keychain that belonged to SHERWOOD. Investigator Ranck used the key to confirm it opened room 207 of the Regency Inn.

    23. Investigators ultimately completed a thorough search of room 207 at which time they located and recovered the following:

    a. <u>RIGHT NIGHTSTAND DRESSER:</u>

        (2) red cased 12 gauge shotgun shells inside of the dresser,

        (2) glass pipes found on the bottom portion of the dresser

    b. <u>IN BETWEEN BED AND RIGHT NIGHTSTAND DRESSER:</u>

        (1) Black pump 12 gauge shotgun with serial number: W236377M

    c. <u>BOTTOM RIGHT SIDE OF BED:</u>

        (1) gray backpack that contained two large clear plastic bags of marijuana (approximately 329 grams and 423 grams)

        (1) black case that contained $6,410 in US currency

        (2) gray wallets that each contained identification cards for SHERWOOD and "Come back with a warrant" patches on the front face of the wallet and numerous clear plastic baggies

    d. <u>UPPER LEFT SIDE OF BED:</u>

       (2) large clear plastic bags of marijuana (approximately 322 grams and 198 grams)

e. <u>LEFT NIGHTSTAND DRESSER</u>:

       (1) folding stock for a firearm

       (1) replica Beretta 9mm BB gun

       (As Investigator Molina was searching around the area near the left night stand dresser, he observed a white rectangular object with the writing "Sherwood T" written on it in red.)

f. <u>WOODEN DESK (TOP OF)</u>:

       (1) round of Luger 9mm ammunition

       (1) small black scale

g. <u>WOODEN DESK (INSIDE)</u>:

       (1) 10 round capacity Smith and Wesson 9mm handgun magazine loaded with 9 rounds of Luger 9mm ammunition

       (1) rifle scope

       (1) clear plastic baggie that contained a white powdery substance (approximately 5 grams of suspected fentanyl),

       (1) replica Glock gun lighter,

       (1) glass pipe and numerous empty clear plastic baggies

h. <u>NEAR WOODEN DESK</u>:

       several plastic bags of marijuana that in total weighed approximately 502 grams)

i. <u>CLOSET</u>:

       (1) black plastic bag that contained marijuana (approximately 402 grams)

       (1) CDCR identification card that belonged to SHERWOOD

       (3) 12 gauge shotgun shells (2 green and 1 red)

       (6) sport memorabilia cards

       (6) .38 special rounds of ammunition

       (11) 9mm Luger rounds of ammunition

j.   VANITY (by the sink):

       (1) black metal safe

       (1) Chase bank statement belonging to SHERWOOD,

       (2) glass pipes and marijuana along with a large amount of empty clear plastic baggies

k.   SAFE:

       (1) clear plastic baggie that contained suspected methamphetamine (approximately 1 gram)

       (1) clear plastic baggie that contained suspected fentanyl (approximately 3 grams)

       (1) clear plastic baggie that contained suspected fentanyl (approximately 2 grams)

       (1) clear plastic container that contained seven white pills

       (1) white/clear baggie labeled "COKE" that contained a white powdery substance/ suspected cocaine (approximately 16 grams)

       (1) clear plastic baggie that contained suspected fentanyl (approximately 7 grams)

>>(1) clear plastic baggie that contained suspected fentanyl (approximately 15 grams)
>>(1) clear plastic baggie that contained suspected heroin (approximately 7 grams)
>>(1) clear plastic baggie that contained suspected heroin (approximately 40 grams)
>>(1) clear plastic baggie that contained 50 blue pills suspected to be oxycontin/fentanyl
>>(1) black/silver loaded Smith and Wesson SD9VE 9mm handgun with serial number: FCX4891
>>(1) ten-round 9mm Smith and Wesson handgun magazine loaded with 10 rounds of ammunition
>>(1) EDD 1099g form that belonged to SHERWOOD
>>(1) EBT card belonging to Ivan Anguiano
>>numerous plastic baggies and two digital scales

24.  A records check of the Smith and Wesson handgun with serial number FCX4891 revealed that the gun was previously reported stolen out of the city of Costa Mesa.

25.  Prior to exiting room 207, DPO Cozzitarto conducted a secondary search. During the secondary search, he located two false tin cans above the small refrigerator. The false cans had little to nothing inside of them but had substantial weight to them. The cans had false bottoms that screwed on and off. Once the cans were opened, a small pocket was revealed. He discovered several items and made the other investigators aware of his findings. The following items were found inside of the false cans:

11

    a.   (1) clear plastic baggie that contained marijuana (approximately 3 grams)

    b.   (1) clear plastic baggie that contained suspected methamphetamine (approximately 3 grams)

    c.   (1) clear plastic baggie that contained suspected heroin (approximately 1 gram)

    d.   (1) clear plastic baggie that contained 10 unidentified purple pills

26. While room 207 was being searched, Investigator Ranck spoke more with Schuler, Gonse, SHERWOOD and two employees of the Regency Inn. Investigator Ranck told Schuler he was not under arrest and only being detained. Schuler told Investigator Ranck that SHERWOOD drove him to the Regency Inn approximately 20 minutes prior to police arrival.

27. Schuler is not allowed on the property per the trespass warning issued to him by the Regency Inn. According to Schuler, SHERWOOD told a Regency employee that he needed to be let into room 207. Schuler hid on the backside of the building as the employee let SHERWOOD into room 207. Schuler saw the employee let SHERWOOD into the room. Investigator Ranck asked if room 207 belonged to SHERWOOD. Schuler said "yes." Schuler advised he has visited and met with SHERWOOD in room 207 in the past. Schuler has visited SHERWOOD at room 207 to buy illegal narcotics, "dope", in the past. Schuler did not know there were guns inside of room 207 because he typically is not allowed entry into the room.

28. Investigator Ranck next spoke with Gonse. According to Gonse, SHERWOOD and Gonse spoke over the phone at approximately 1700 hours. SHERWOOD told Gonse to meet him in his room at the Regency Inn, specifically room 207. Gonse has visited SHERWOOD at this room on at least one prior occasion. Gonse allegedly arrived at room 207 a few minutes prior to police arrival. Gonse was meeting with SHERWOOD to trade sunglasses for illegal narcotics, "dope."

29. Investigator Ranck also spoke with front desk employee J.Y., who typically works the day shift and rarely sees SHERWOOD.  J.Y. stated that SHERWOOD has been staying in room 223 with his girlfriend but also has permission to use room 207 from Parker. Today SHERWOOD asked J.Y. to let him into room 207. J.Y. further explained that room 207 is also SHERWOOD'S room because SHERWOOD has access to the room. J.Y. confirmed he sees SHERWOOD "every once in a while" in room 207, but also finds him in room 223.

30. Investigator Ranck and DPO Cozzitarto later spoke with SHERWOOD and SHERWOOD stated that the room 207 key belonged to him. SHERWOOD initially denied the room belonged to him. SHERWOOD later admitted to staying in the room for a couple of days. Sherwood explained that room 207 belonged to a friend of a friend (referring to Parker). SHERWOOD also admitted that he has been dealing marijuana out of the room but denied selling any other illegal substances. SHERWOOD also advised that he did not work with Parker. Sherwood told Investigator Ranck that he had a green backpack inside of the room that belonged to him.

13

31. Investigator Ranck lastly spoke with Regency Inn employee D.J., who stated that SHERWOOD had been using room 207 for a few weeks. D.J. further explained that SHERWOOD regularly travels each day between room 223 and 207 and has done so throughout the past few weeks. D.J. also believes that SHERWOOD has been using illegal narcotics.

32. At the conclusion of the investigation, Schuler and Gonse were cited and released for misdemeanor violations and SHERWOOD was arrested for multiple state felony violations. SHERWOOD was ultimately transported to the CMPD for booking.

33. While at the CMPD, Investigators Ranck and Soto interviewed SHERWOOD. While inside CMPD interview room #2, Investigator Ranck read SHERWOOD his Miranda Rights directly from his department issued Miranda Advisement Card. SHERWOOD answered "yes" to all of the questions asked. SHERWOOD initially told the investigators that the room did not belong to him. SHERWOOD later explained that Parker didn`t arrive at room 207 until approximately 1340 hours and left around 1400 hours. SHERWOOD next advised he had left and returned to the room around 1600 hours and Parker was not at the location when he returned.

34. SHERWOOD stated two people were inside of the room, when he returned, but then retracted his statement and said he was let into the room by an employee. SHERWOOD told the investigators that the money found inside the room did not belong to him. SHERWOOD admitted he is a methamphetamine and

marijuana user. He also stated the last time he used methamphetamine was yesterday morning.

35. SHERWOOD said he did not know about the loaded pistol or shotgun found inside the room. SHERWOOD said he had never touched the firearms or ammunition inside of the room. SHERWOOD admitted that he had been selling marijuana while he had stayed inside of the room on prior occasions. Investigator Ranck asked how much marijuana he believed was inside of the room. SHERWOOD said approximately 2-3 pounds.

36. Sherwood explained that the reason he didn`t use the room 207 key that he had in his possession was because Parker had locked the "top lock" so the standard key would not open the room. He explained that was the reason for asking an employee to unlock the top lock of room 207. After the investigators concluded their interview, Investigator Ranck returned SHERWOOD to the CMPD jail.

    **B.    SHERWOOD'S Criminal History**

37. On March 21, 2022, I reviewed certified conviction documents for SHERWOOD and learned that he has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

    a. On or about January 27, 2017, felony violation of California Penal Code Section 22210, in the Superior Court for the State of California, County of Orange, Case Number 17WF0130;

    b. On or about January 7, 2020, felony violations of California Health & Safety Code Section 11378, in the

Superior Court for the State of California, County of Orange, Case Number 19WF2940

### C. Interstate Nexus

38. On March 24, 2022, an ATF Interstate Nexus Expert examined the firearms and ammunition recovered from SHERWOOD and confirmed that both firearms and 42 rounds of ammunition were manufactured outside the State of California. Because the firearms and ammunition were found in California, I believe that they traveled in and affected interstate or foreign commerce.

### D. DRUG ANALYSIS RESULTS

39. On or about April 8, 2022, I obtained and reviewed a Seized Drugs Report from the Orange County Crime Lab. After reviewing the report, I learned that the suspected illegal narcotics previously recovered by CMPD Gang Investigators during SHERWOOD'S arrest on February 2, 2022, tested positive for Para-Fluorofentanyl, Methamphetamine, Cocaine, Fentanyl, and Heroin.

### E. SHERWOOD'S Other Recent Drug and Firearm-Related Arrests

#### 1. March 25, 2022 – fentanyl and firearm

40. On March 25, 2022, SHERWOOD was observed driving a truck, with tinted windows in violation of California Vehicle Code § 26708(a)(1). He was pulled over by CMPD. SHERWOOD said, "I don't have anything on me. Check me." A CMPD officer recovered approximately $833 in cash from SHERWOOD, and a Visa debit card in someone else's name. SHERWOOD said the card wasn't his. SHERWOOD's possession of someone's identifying information was a violation of California Penal Code

16

§ 530.5(c)(1).  SHERWOOD had the key to Room 207 of the Regency Inn on him.

41. SHERWOOD was placed under arrest for this violation. SHERWOOD's truck was searched.  A useable amount of fentanyl was found in the glove compartment.  In the right rear passenger seat was a bag containing approximately $1,416 in cash in one location, and approximately $414 in cash in another location within the bag.  In the left rear passenger seat, there was a Glock 19 firearm, a 31-round, extended magazine loaded with 13 rounds of 9 mm ammunition, and a second, empty 15-round extended magazine.  A records check revealed the firearm was stolen.

42. On the same date, CMPD Officers continued their investigation of SHERWOOD and obtained a search warrant for room 207 of the Regency Inn at 2544 Newport Boulevard in Costa Mesa. Officers found approximately $6000 in cash, a scale with white powdery residue, and fentanyl, which, with packaging, weighed approximately 72 grams.  During a Mirandized interview, SHERWOOD refused to identify where he was staying, but admitted he lived in a hotel room.  Asked about the gun in the backseat of the truck, SHERWOOD said, "I have no idea what you're talking about."  Asked if the gun in the truck belonged to him, SHERWOOD said, "That one is not mine."  He later said his "buddy" left it in the truck.

    2. April 20, 2022 – methamphetamine and other assorted narcotics

43. On April 19, 2022, two people told CMPD that they bought drugs from "Tanner" at Room 207 of the Regency Inn in

Costa Mesa. Officers observed SHERWOOD come out of Room 207 and access the trunk of a grey Mercedes. Officers obtained a warrant to search Room 207 of the Regency Inn and the grey Mercedes. When they arrived to execute the warrant, officers saw a female ("female 1") put a bag in the Mercedes. Officers also saw SHERWOOD come out of Room 111.

44. In the Mercedes, in a bag, officers found approximately 19.9 grams of what appeared to be methamphetamine. Female 1 told officers "Tanner" handed her the bags to put in the car. Though hesitant, she said the methamphetamine belonged to Tanner. Inside Room 207, officers found a scale, 20 M-30 counterfeit oxycodone pills, 175 Xanax bars, 3.7 grams of black tar heroin, 14.2 grams of ketamine, and 36.8 grams of suspected GHB. During a Mirandized interview, SHERWOOD denied that the methamphetamine belonged to him.

    **F.    CONCLUSION**

45. For the reasons described above, there is probable cause to believe that SHERWOOD has committed a violation of 18 U.S.C. §§ 924(c)(1)(A)(i): Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this  27  day of
  May    , 2022.

_____
HONORABLE JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE